# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ONCO INVESTMENT COMPANY, a Delaware corporation, et al., | Jointly Administered Case No. 04-10558 (JBR) |
| Debtors. | SECOND AMENDED DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE FOR THE SECOND AMENDED JOINT PLAN OF REORGANIZATION OF DEBTORS AND DEBTORS IN POSSESSION |

DANIEL J. DeFRANCESCHI (DE 2732)
PAUL N. HEATH (DE 3704)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700 (Telephone)
(302) 658-6548 (Facsimile)

-and-

DAVID G. HEIMAN (OH 0038271)
HEATHER LENNOX (OH 0059649)
CARL E. BLACK (OH 0069479)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-3939 (Telephone)
(216) 579-0212 (Facsimile)

-and-

MICHELLE MORGAN HARNER (IL 6276282)
JONES DAY
77 W. Wacker Drive
Chicago, Illinois 60601
(312) 782-3939 (Telephone)
(312) 782-8585 (Facsimile)

July 30, 2004

ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION

Exhibit B

# SUMMARY

*This summary highlights some of the information discussed in greater detail elsewhere in this Disclosure Statement. This summary may not contain all of the information that is important to you, and you should carefully read the entire Disclosure Statement, including the Exhibits and the other documents to which we refer you. For a more detailed overview of the Plan, see "Introduction" (page 5) and "General Information Concerning the Plan" (page 122). All Exhibits to the Plan will be Filed with the Bankruptcy Court and available for review, free of charge, on The Trumbull Group, L.L.C.'s ("Trumbull") website (www.trumbullgroup.com (the "Document Website")) no later than September 1, 2004 (i.e., at least 20 days before the Voting Deadline). Copies of all Exhibits to the Plan also may be obtained, free of charge, from Trumbull by calling either 877-878-6285 (toll-free) or 860-697-5401.*

**The Debtors**

The Debtors are ONCO; Oglebay, its parent corporation; and all of Oglebay's other direct and indirect wholly-owned subsidiaries. A list of the Subsidiary Debtors is attached hereto as Exhibit I.

**The Chapter 11 Cases**

The Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code on February 23, 2004 to pursue a financial restructuring that would permit the Debtors to reduce their indebtedness and provide more financial flexibility to implement their business strategy. Since the commencement of the Chapter 11 Cases, the Debtors have been operating their businesses as debtors in possession under the supervision of the Bankruptcy Court. See "Certain Events Preceding the Debtors' Chapter 11 Filings" (page 30) and "Operations During the Chapter 11 Cases" (page 36).

**The Plan**

On July 30, 2004, the Debtors filed the amended Plan with the Bankruptcy Court. Upon Bankruptcy Court approval of the Disclosure Statement, the Debtors will solicit acceptances of the Plan, a copy of which is attached hereto as Exhibit II. See "Overview of the Plan" (page 7), "General Information Concerning the Plan" (page 122) and "Distributions Under the Plan" (page 130). The Plan is supported by, and represents a valuable settlement with, the Creditors' Committee (a statutory committee established to represent the interests of unsecured creditors of the Debtors' Estates) and certain creditors holding a majority of the Debtors' outstanding indebtedness. See "Introduction" (page 5).

**Voting and Confirmation of the Plan**

Holders of Claims against a Debtor in certain impaired Classes under the Plan are entitled to vote to accept or reject the Plan. If you hold Claims in more than one voting Class, or hold multiple Claims, you may receive more than one Ballot. You should complete, sign and return each Ballot that you receive. Please carefully follow all of the instructions contained on the Ballot provided to you. To be counted, your Ballot must be received by the Voting Deadline at the address set forth on the pre-addressed envelope provided to you. If you are entitled to vote and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, please call the voting agent, Trumbull, at 860-687-3952. See "Voting and Confirmation of the Plan" (page 136).

**Recommendation**

The Debtors' Boards of Directors recommend that all parties entitled to vote on the Plan vote to **ACCEPT** the Plan. The Creditors' Committee also supports the Plan, and has recommended that creditors vote to **ACCEPT** the Plan. See "Recommendation and Conclusion" (page 149).

**Confirmation and Effective Date**

The Confirmation Hearing, at which the Bankruptcy Court will consider approval of the Plan, currently is scheduled for September 29, 2004, beginning at 9:30 a.m., Eastern Time. Assuming that the requisite votes to accept the Plan are received, that the applicable requirements under the Bankruptcy Code are met and that the other conditions to the Confirmation of the Plan are satisfied, the Effective Date of the Plan currently is expected to occur on October 25, 2004, or as soon thereafter as practicable.

**Conditions to Confirmation and the Effective Date**

There are several conditions precedent to Confirmation of the Plan and the Effective Date, including the completion and execution of agreements relating to new financing and the raising of substantial new capital. If these conditions are not satisfied or waived, the Plan will not become effective. See "Overview of the Plan — Conditions to Confirmation and the Effective Date of the Plan" (page 24).

**Treatment of Claims and Interests**

For a summary of the classification of Claims and Interests, the estimated aggregate amount of Claims and Interests in each Class and the estimated amount and nature of distributions to holders of Claims and Interests in each Class under the Plan, see "Overview of the Plan — Summary of Classes and Treatment of Claims and Interests" (page 8).

The treatment of Classes under the Plan generally is as follows:

- Class 1 (Priority Claims) – Holders of Allowed Claims in Class 1, including certain employee wage Claims and certain other Claims entitled to priority under the Bankruptcy Code, will receive distributions of Cash in the full amount of their Allowed Claims (see page 9). Class 1 Claims are unimpaired;

- Class 2 (Vessel Term Loan Claims) – The Vessel Term Loan Agreement will be Reinstated on the Effective Date in accordance with Section I.A.91.b of the Plan (see page 9). Class 2 Claims are unimpaired;

- Class 3 (Old Senior Secured Note Claims) – Holders of Allowed Claims in Class 3, relating to the Old Senior Secured Notes issued by Oglebay, will have their Allowed Claims Reinstated pursuant to Section I.A.91.b of the Plan and thereafter such Allowed Claims will be redeemed and satisfied in full by the Reorganized Debtors with a Cash payment of 106% of principal amount of the Old Senior Secured Notes (which amount shall include the paid-in-kind interest), plus the accrued and unpaid interest thereon at the non-default rate through the date of such payment, in accordance with the terms of the Old Senior Secured Notes Purchase Agreement. Certain holders of Class 3 Claims have asserted the right to collect additional amounts from holders of Class 7 Claims pursuant to the subordination provisions of the Old Senior Subordinated Note Indenture. The Debtors and the Creditors' Committee dispute this assertion and the parties intend to have the Bankruptcy Court resolve this dispute at or before the Confirmation Hearing (see page 10). Class 3 Claims are unimpaired;

- Class 4 (Other Secured Claims) – Holders of Allowed Claims in Class 4, relating to certain secured debt, will, at the election of the applicable Debtor, either receive distributions of Cash in the full amount of their Allowed Claims, have their Allowed Claims Reinstated or receive the collateral securing their Allowed Claims (see page 11). Class 4 Claims are unimpaired;

- Class 5 (General Unsecured Claims) – Holders of Allowed Claims in Class 5, relating to certain unsecured debt, will, at the election of the applicable Debtor or Reorganized Debtor,

Exhibit B

either receive distributions of Cash in the full principal amount of their Allowed Claims or have the full principal amount of their Allowed Claims Reinstated. On the Effective Date, all Tort Claims will be Reinstated in accordance with Section I.A.91.a of the Plan (see page 12). Class 5 Claims are unimpaired;

- Class 6 (MLO Claims) – The MLO Contract will be amended as set forth on Exhibit III.C.2 to the Plan and, as of the Effective Date, will be assumed (as amended) by Reorganized Oglebay (see page 12). Class 6 Claims are impaired;

- Class 7 (Old Senior Subordinated Note Claims) – Holders of Allowed Claims in Class 7, relating to the Old Senior Subordinated Notes issued by Oglebay, will receive their Pro Rata distribution of approximately 2,928,571 shares of New Common Stock in Reorganized Oglebay in satisfaction of their Allowed Claims (and any accompanying Share Purchase Rights in accordance with the Share Purchase Rights Agreement and Section IV.I of the Plan). Certain holders of Class 3 Claims have asserted the right to collect additional amounts from holders of Class 7 Claims pursuant to the subordination provisions of the Old Senior Subordinated Note Indenture, which may dilute the ultimate recovery of Class 7 Claims under the Plan. The Debtors and the Creditors' Committee dispute this assertion and the parties intend to have the Bankruptcy Court resolve this dispute at or before the Confirmation Hearing (see page 12). Class 7 Claims are impaired;

- Class 8 (Intercompany Claims) – Holders of Allowed Claims in Class 8, relating to Claims by any Debtor against another Debtor, will not receive any property under the Plan (see page 13). Class 8 Claims are impaired;

- Class 9 (Subsidiary Debtor Equity Interests) – Holders of Allowed Interests in Class 9, relating to the subsidiary interests held directly or indirectly by Oglebay, will have their Allowed Interests Reinstated, subject to the Restructuring Transactions (see page 13). Class 9 Interests are unimpaired; and

- Class 10 (Old Common Stock of Oglebay) – The Old Common Stock of Oglebay will be cancelled on the Effective Date. Holders of Allowed Interests in Class 10 relating to the Old Common Stock of Oglebay will receive New Warrants to purchase one-tenth (1/10th) of a share of New Common Stock (and any accompanying Share Purchase Rights in accordance with the Share Purchase Rights Agreement and Section IV.I of the Plan) for each share of Old Common Stock held on the Distribution Record Date (see page 13). Class 10 Interests are impaired.

**Acceptance or Cramdown**

The Plan will be treated as accepted by an impaired Class of Claims entitled to vote if holders of at least two-thirds in dollar amount and a majority in number of Claims of that Class vote to accept the Plan. In addition, pursuant to the Bankruptcy Code, a plan of reorganization may be confirmed even if it is not accepted by all impaired classes — a process referred to as "cramdown" — as long as the plan is accepted by at least one impaired class of claims (excluding the accepting votes of insiders) and the Bankruptcy Court finds that such a plan is fair and equitable and does not discriminate unfairly with respect to dissenting impaired classes. The Debtors believe that the Plan may be crammed down over the dissent of certain Classes of Claims and Interests. See "Voting and Confirmation of the Plan — Acceptance or Cramdown" (page 138).

Exhibit B

**Tax Consequences of the Plan**

For a summary description of certain federal tax consequences of the Plan, see "Certain U.S. Federal Income Tax Consequences of the Plan" (page 141).

**Risk Factors**

The success of the transactions contemplated by the Plan and the value of the securities to be issued under the Plan to holders of Allowed Claims and Interests in certain Classes are subject to numerous risks and uncertainties. See "Risk Factors" (page 109).

Issued on the Effective Date and Other Post-Reorganization Indebtedness" for a description of the New Common Stock, the New Warrants and the New Preferred Stock to be issued on the Effective Date. For an explanation of the treatment of the Allowed Claims and Allowed Interests not discussed above and for further explanation of the treatment of Allowed Claims and Allowed Interests in general, see also "— Summary of Classes and Treatment of Claims and Interests."

For purposes of computations of Claim amounts, administrative and other expenses and similar computational purposes, the Effective Date is assumed to occur on October 31, 2004 (the actual Effective Date, however, will occur after this time). There is no assurance as to if or when the Effective Date will actually occur. Procedures for the distribution of Cash and securities pursuant to the Plan are described in "Distributions Under the Plan."

The determination of the relative distributions to be received under the Plan by the holders of Allowed Claims and Allowed Interests in certain Classes was based upon, among other factors, estimates of the amounts of Allowed Claims and Allowed Interests in such Classes and the relative priorities of such Allowed Claims and Allowed Interests. The estimates of the amounts of Allowed Claims and Allowed Interests in each Class are set forth below in "— Summary of Classes and Treatment of Claims and Interests" and are calculated as of the assumed Effective Date of October 31, 2004. The distributions to be received by holders of Allowed Claims or Allowed Interests in certain Classes could differ from these estimates if the estimates, despite the Debtors' best efforts, prove to be inaccurate.

The "cramdown" provisions of section 1129(b) of the Bankruptcy Code permit confirmation of a chapter 11 plan of reorganization in certain circumstances even if the plan is not accepted by all impaired classes of Claims and Interests. See "Voting and Confirmation of the Plan — Acceptance or Cramdown." The Debtors intend to request Confirmation pursuant to the cramdown provisions of the Bankruptcy Code with respect to Class 10 and any other impaired Class of Claims or Interests that rejects the Plan and reserve the right to amend the Plan, if necessary, in connection therewith. If such request were granted by the Bankruptcy Court, the dissenting Classes, in certain cases, may receive alternative treatment under the Plan. Although the Debtors believe that the Plan can be confirmed under the cramdown provisions of the Bankruptcy Code, there is no assurance that the requirements of such provisions would be satisfied.

**Summary of Classes and Treatment of Claims and Interests**

The classification of Claims and Interests, the estimated aggregate amount of Claims in each Class (calculated as of the assumed Effective Date of October 31, 2004) and the estimated amount and nature of distributions to holders of Allowed Claims or Allowed Interests in each Class are summarized in the table below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified. For a discussion of certain additional matters related to Administrative Claims and Priority Tax Claims, see "— Information Regarding Assertion and Treatment of Administrative Claims and Priority Tax Claims" below.

*The information set forth in the table below with respect to each Class of Claims or Interests is presented on a combined basis for all of the Debtors to which such information is applicable. The Estimated Aggregate Claims Amounts shown in the table below are based upon the Debtors' preliminary review of their books and records and reflect the Debtors' estimates of the aggregate amounts of such Claims that the Debtors believe will be asserted upon resolution of all Disputed Claims. Certain of these Disputed Claims may be material, and the total amount of all such Claims, including Disputed Claims, may be materially in excess of the total amount of Allowed Claims assumed in the development of the Plan.*

Each amount designated in the table below as "Estimated Percentage Recovery" for each Class is the quotient of, as applicable, the Cash or the assumed value of the New Common Stock or the assumed value of the New Warrants to be distributed to all holders of Allowed Claims or Allowed Interests, as

applicable, in such Class, divided by the estimated aggregate amount of Allowed Claims or Allowed Interests, as applicable, in such Class. For purposes of these calculations, a value of $8.54 per share of New Common Stock has been assumed, based upon the midpoint of the estimated going concern enterprise value of Reorganized Oglebay, as set forth in "Securities to be Issued on the Effective Date and Other Post-Reorganization Indebtedness—Valuation," and the approximately 2,928,571 shares of New Common Stock assumed to be issued on the Effective Date. See "Securities to be Issued on the Effective Date and Other Post-Reorganization Indebtedness—Valuation" for a description of the manner in which the estimated enterprise value of Reorganized Oglebay was calculated and the assumptions used in connection with the foregoing and the limitations thereon, and "Risk Factors" for a discussion of various other factors that could materially affect the value of New Common Stock and the New Warrants distributed on the Effective Date.

*Although the Debtors' management believes that these valuation assumptions are reasonable, there is no assurance that the New Common Stock will have the value assumed herein. See "Risk Factors." Reorganized Oglebay intends to apply to list the New Common Stock on The NASDAQ National Market as soon as practicable after the Effective Date when Reorganized Oglebay meets the listing requirements. However, it is unlikely that the New Common Stock will qualify for listing at the time it is issued, and there can be no assurance that the New Common Stock will ever be listed on The NASDAQ National Market. If Reorganized Oglebay is not able to list such securities on The NASDAQ National Market, it intends to cooperate with any registered broker-dealer who may seek to initiate price quotations for the New Common Stock on the OTC Bulletin Board. Again, however, no assurance can be made that such securities will be quoted on the OTC Bulletin Board or that an active trading market will exist. The Old Common Stock of Oglebay currently is quoted on the Pink Sheets. The value of the New Common Stock ultimately may be substantially higher or lower than reflected in the valuation assumptions provided herein because of a number of other factors, including those discussed in "Risk Factors." The value of equity securities, such as the New Common Stock, issued under a plan of reorganization is subject to numerous unforeseeable circumstances and, therefore, cannot be predicted.*

| Description and Amount of Claims or Interests | Treatment |
|---|---|
| Class 1 (Priority Claims): Consists of all Claims against any Debtor entitled to priority under Section 507(a) of the Bankruptcy Code that are not an Administrative Claim or a Priority Tax Claim.<br><br>Estimated Aggregate Claims Amount: $0[1] | Unimpaired. On the Effective Date, each holder of an Allowed Claim in Class 1 will receive Cash equal to the amount of such Allowed Claim, unless the holder of such Claim and the applicable Debtor or Reorganized Debtor agree to a different treatment.<br><br>Estimated Percentage Recovery: 100% |
| Class 2 (Vessel Term Loan Claims): Consists of all Claims against a Debtor under or evidenced by the Vessel Term Loan Agreement.<br><br>Estimated Aggregate Claims Amount: $12,537,151.00, plus accrued and unpaid interest at the non-default rate. | Unimpaired. On the Effective Date, the Vessel Term Loan Agreement will be Reinstated in accordance with Section I.A.91.b of the Plan. In addition, each holder of an Allowed Vessel Term Loan Claim shall be entitled to retain any amounts paid to it or on its behalf as adequate protection (and receive and retain any other amounts that as of the Effective Date are due as adequate protection |

---

[1] A nominal amount of Priority Claims may be asserted against the Debtors.

| Description and Amount of Claims or Interests | Treatment |
|---|---|
| | under the First Final DIP Order, the Second Final DIP Order or any other Final Order of the Bankruptcy Court but not previously paid).<br><br>Estimated Percentage Recovery: 100% |
| Class 3 (Old Senior Secured Note Claims): Consists of all Claims against a Debtor under or evidenced by the Old Senior Secured Notes Purchase Agreement, including any Claims pursuant to any guaranty agreement.<br><br>Estimated Aggregate Claims Amount: $92,642,241.00, which includes $75,000,000.00 outstanding principal, plus paid-in-kind interest in the amount of $8,842,718.00 and accrued and unpaid cash interest in the amount of $8,799,523.00 | Unimpaired. On the Effective Date, the Old Senior Secured Notes will be Reinstated pursuant to Section I.A.91.b of the Plan and thereafter the Reinstated Old Senior Secured Notes will be redeemed and satisfied in full by the Reorganized Debtors with a Cash payment of 106% of principal amount of the Old Senior Secured Notes (which amount shall include the paid-in-kind interest), plus the accrued and unpaid interest thereon at the non-default rate through the date of such payment, in accordance with the terms of the Old Senior Secured Notes Purchase Agreement.<br><br>Each holder of an Allowed Senior Secured Note Claim may retain any amounts paid to it or on its behalf as adequate protection (and receive and retain any other amounts that as of the Effective Date are due as adequate protection under the First Final DIP Order or the Second Final DIP Order but not previously paid); *provided, however*, that the Debtors reserve the right to seek to have some or all of such amounts applied to the principal balance of a holder's Old Senior Secured Note Claim.<br><br>In addition, to the extent that attorneys' fees and expenses for the *Ad Hoc* Noteholders' Committee and/or any predecessor thereto remain outstanding as of the Effective Date, such attorneys may submit a request for the payment of such reasonable fees and expenses as follows: (a) such attorneys shall provide reasonable detail in support of their respective Claims to the parties identified in Section XIII.G of the Plan no later than ten days after the Effective Date; (b) such parties shall have the right to File objections to such Claims based on a "reasonableness" standard and/or the terms of the Old Senior Secured Notes and the Old Senior Secured Notes Purchase Agreement within 20 days after receipt of supporting documentation; and (c) the Reorganized Debtors shall pay any such Claims by the later of (i) 30 days after the receipt of supporting documentation from such attorneys or (ii) ten Business Days after the resolution of any objections to the Claims of such attorneys. The Reinstatement of the Old Senior Secured Notes under the Plan and any distributions under such |

| Description and Amount of Claims or Interests | Treatment |
|---|---|
| | notes will not be affected by or reduced on account of the payment of reasonable attorneys' fees and expenses pursuant to Section III.B.3 of the Plan.<br><br>Certain holders of Class 3 Claims have asserted the right to collect additional amounts from holders of Class 7 Claims pursuant to the subordination provisions of the Old Senior Subordinated Note Indenture. The Debtors and the Creditors' Committee dispute this assertion and the parties intend to have the Bankruptcy Court resolve this dispute at or before the Confirmation Hearing.<br><br>Estimated Percentage Recovery: 100% |
| Class 4 (Other Secured Claims): Consists of all Secured Claims against any Debtor other than a Prepetition Bank Loan Claim, an Old Senior Secured Note Claim or a Vessel Term Loan Claim.<br><br>Estimated Aggregate Claims Amount: $189,279.00 | Unimpaired. On the Effective Date, unless otherwise agreed by a Claim holder and the applicable Debtor or Reorganized Debtor, each holder of an Allowed Claim in Class 4 will receive treatment on account of such Allowed Claim in the manner set forth in Option A, B or C below, at the election of the applicable Debtor. The applicable Debtor will be deemed to have elected Option B except with respect to any Allowed Claim as to which the applicable Debtor elects Option A or Option C in one or more certifications Filed prior to the conclusion of the Confirmation Hearing.<br><br>*Option A*: On the Effective Date, Allowed Claims in Class 4 with respect to which the applicable Debtor elects Option A will be paid in Cash in full.<br><br>*Option B*: On the Effective Date, Allowed Claims in Class 4 with respect to which the applicable Debtor elects or is deemed to have elected Option B will be Reinstated.<br><br>*Option C*: On the Effective Date, a holder of an Allowed Claim in Class 4 with respect to which the applicable Debtor elects Option C will be entitled to receive (and the applicable Debtor shall release and transfer to such holder) the collateral securing such Allowed Claim.<br><br>Estimated Percentage Recovery: 100% |

11

Exhibit B

| Description and Amount of Claims or Interests | Treatment |
|---|---|
| Class 5 (General Unsecured Claims): Consists of all Claims that are not an Administrative Claim, Cure Amount Claim, Priority Claim, Priority Tax Claim, Prepetition Bank Loan Claim, Old Senior Secured Note Claim, Vessel Term Loan Claim, Other Secured Claim, Old Senior Subordinated Note Claim or MLO Claim.<br><br>Estimated Aggregate Claims Amount: $26,933,677.00 | Unimpaired. On the Effective Date, holders of Allowed General Unsecured Claims, at the election of the applicable Debtor or Reorganized Debtor, will (a) receive Cash equal to the principal amount of its Allowed General Unsecured Claim or (b) have the principal amount of its Allowed General Unsecured Claim Reinstated. On the Effective Date, all Tort Claims will be Reinstated in accordance with Section I.A.91.a of the Plan.<br><br>Estimated Percentage Recovery: 100% |
| Class 6 (MLO Claims): Consists of all Claims against a Debtor under or evidenced by the MLO Contract.<br><br>Estimated Aggregate Claims Amount: $14,000,000.00 to $26,100,000.00 | Impaired. The MLO Contract will be amended as set forth on Exhibit III.C.2 of the Plan and, as the Effective Date, will be assumed (as amended) by Reorganized Oglebay pursuant to Section V.A of the Plan and section 365 of the Bankruptcy Code. The MLO Claims will be paid in accordance with the amended MLO Contract.<br><br>Estimated Percentage Recovery: See "Treatment of Certain Claims Under the Plan—Treatment of MLO Claims." |
| Class 7 (Old Senior Subordinated Note Claims): Consists of all Claims against a Debtor under or evidenced by the Old Senior Subordinated Note Indenture, including any Claims pursuant to any guaranty agreement.<br><br>Estimated Aggregate Claims Amount: $105,611,111.11, which includes accrued and unpaid prepetition interest. | Impaired. The Old Senior Subordinated Note Claims will be allowed in the aggregate amount of $105,611,111.11. On the Effective Date, each holder of an Allowed Old Senior Subordinated Note Claim will receive in respect of such Allowed Claim against all of the Debtors its Pro Rata share of approximately 2,928,571 shares of New Common Stock (and any accompanying Share Purchase Rights in accordance with the Share Purchase Rights Agreement and Section IV.I of the Plan).<br><br>Certain holders of Class 3 Claims have asserted the right to collect additional amounts from holders of Class 7 Claims pursuant to the subordination provisions of the Old Senior Subordinated Note Indenture, which may dilute the ultimate recovery of Class 7 Claims under the Plan. The Debtors and the Creditors' Committee dispute this assertion and the parties intend to have the Bankruptcy Court resolve this dispute at or before the Confirmation Hearing.<br><br>Estimated Percentage Recovery: 24% |

Exhibit B

| | |
|---|---|
| Class 8 (Intercompany Claims): Consists of any Claim by any Debtor against another Debtor. | Impaired. No property will be distributed to the holders of Allowed Intercompany Claims. Notwithstanding this treatment of Class 8 Claims, each of the holders of an Intercompany Claim will be deemed to have accepted the Plan.<br><br>Estimated Percentage Recovery: 0% |
| Class 9 (Subsidiary Debtor Equity Interests): Consists of, as to a particular Subsidiary Debtor, any Interests in such Debtor held directly or indirectly by Oglebay. | Unimpaired. On the Effective Date, the Subsidiary Debtor Equity Interests will be Reinstated, subject to the Restructuring Transactions.<br><br>Estimated Percentage Recovery: 100% |
| Class 10 (Old Common Stock of Oglebay): Consists of Interests in respect of the Old Common Stock of Oglebay and any Claims related thereto. | Impaired. On the Effective Date, the Old Common Stock of Oglebay will be cancelled. Each holder of an Allowed Interest on account of Old Common Stock of Oglebay will receive New Warrants to purchase one-tenth (1/10th) of a share of New Common Stock (and any accompanying Share Purchase Rights in accordance with the Share Purchase Rights Agreement and Section IV.I of the Plan) for each share of Old Common Stock held on the Distribution Record Date. Based on the number of shares of Old Common Stock currently outstanding, the Debtors anticipate that the New Warrants will be exercisable for an aggregate of approximately 523,869 shares of New Common Stock. A holder of Old Common Stock of Oglebay who does not hold an Allowed Interest on the Distribution Record Date will not receive any New Warrants.<br><br>Estimated Percentage Recovery: 0% |

**Information Regarding Assertion and Treatment of Administrative Claims and Priority Tax Claims**

*Administrative Claims*

Except as specified in Section III.A.1 of the Plan, and subject to the bar date provisions therein, unless otherwise agreed by the holder of an Administrative Claim and the applicable Debtor or Reorganized Debtor or unless an order of the Bankruptcy Court provides otherwise, each holder of an Allowed Administrative Claim will receive, in full satisfaction of its Administrative Claim, Cash equal to the amount of such Allowed Administrative Claim either (a) on the Effective Date or (b) if the Administrative Claim is not allowed as of the Effective Date, 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order or a Stipulation of Amount and Nature of Claim is executed by the applicable Reorganized Debtor and the holder of the Administrative Claim. Administrative Claims are defined in the Plan as Claims for costs and expenses of administration allowed under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises); (b) Claims under the Second DIP Credit Agreement

- The documents effectuating the Confirmation Facility shall be in form and substance reasonably satisfactory to the Debtors and the Creditors' Committee and shall have been executed and delivered by the Reorganized Debtors, the Confirmation Facility Agent and each of the lenders under the Confirmation Facility.

- The Debtors shall have received at least $85 million in connection with the issuance of the New Preferred Stock.

- The Effective Date shall occur on or after October 25, 2004.

- The Plan and all Exhibits to the Plan shall not have been materially amended, altered or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with Section XIII.C of the Plan.

*Effect of Nonoccurrence of Conditions to the Effective Date*

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section IX.C of the Plan, then upon motion by the Debtors or any party in interest made before the time that each of such conditions has been satisfied and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order will be vacated by the Bankruptcy Court; *provided, however*, that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is satisfied before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to Section IX.D of the Plan: (a) the Plan will be null and void in all respects, including with respect to (i) the discharge of Claims and termination of Interests pursuant to section 1141 of the Bankruptcy Code, (ii) the assumptions, assignments or rejections of Executory Contracts and Unexpired Leases pursuant to Sections V.A and V.D of the Plan and (iii) the releases described in Section IV.E.3 of the Plan; and (b) nothing contained in the Plan will (i) constitute a waiver or release of any claims by or against, or any Interest in, any Debtor or (ii) prejudice in any manner the rights of the Debtors or any other party in interest.

**Modification or Revocation of the Plan**

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend or modify the Plan before the Effective Date.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation does not occur, then the Plan will be null and void in all respects, and nothing contained in the Plan will: (a) constitute a waiver or release of any claims by or against, or any Interests in, any Debtor; (b) prejudice in any manner the rights of any Debtor or any other party in interest; or (c) constitute an admission of any sort by any Debtor or any other party in interest.

### TREATMENT OF CERTAIN CLAIMS UNDER THE PLAN

**Treatment of Old Senior Secured Note Claims**

The Old Senior Secured Notes Purchase Agreement provides for the payment of a "prepayment premium" upon the occurrence of an optional redemption, event of default or acceleration. The amount of the prepayment premium varies from 2% to 18% of the original principal amount of the Old Senior Secured Notes, depending on when the obligation to pay the prepayment premium is triggered. The filing of the Chapter 11 Cases constituted an event of default under the Old Senior Secured Notes Purchase Agreement and resulted in the automatic acceleration of the Debtors' obligations under the Old Senior

Secured Notes. Because the filing of the Chapter 11 Cases occurred prior to October 25, 2004, certain holders of the Old Senior Secured Notes assert that they are entitled to receive a prepayment premium of 18% (the "Early Prepayment Premium") of the original principal amount of such notes. In addition, these holders of the Old Senior Secured Notes assert that they are entitled to receive the payment of interest at a default rate of 21% per annum (the "Default Interest"), which is the interest rate triggered by an event of default under the Old Senior Secured Notes Purchase Agreement. Section 506 of the Bankruptcy Code permits oversecured creditors to recover, among other things, interest on an oversecured claim and any reasonable fees, costs or charges provided for under the agreement under which such claim arose. The Creditors' Committee and the Debtors dispute that the holders of the Old Senior Secured Notes are entitled to the Default Interest and Early Prepayment Premium on a variety of grounds, including that such charges are unreasonable and not recoverable by the holders of the Old Senior Secured Notes from the Debtors, pursuant to section 506 of the Bankruptcy Code or otherwise. On June 24, 2004, certain holders of the Old Senior Secured Notes filed an adversary proceeding, captioned MW Post Portfolio Fund Ltd. v. Norwest Bank Minn. (In re ONCO Inv. Co.), Case No. 04-10558, Adv. Proc. No. 04-54122 (the "Adversary Proceeding"), against Oglebay and the Indenture Trustee asserting, among other things, their entitlement to the Early Prepayment Premium and the Default Interest. See "Operations During the Chapter 11 Cases— Case Administration and Related Activities — Adversary Proceeding Relating to Old Senior Secured Notes."

The Adversary Proceeding also seeks an order, pursuant to the subordination provisions of the Old Senior Subordinated Note Indenture and section 510(a) of the Bankruptcy Code: (a) declaring that no amounts may be paid by the Debtors to the holders of the Old Senior Subordinated Notes or the Indenture Trustee on account of Old Senior Subordinated Note Claims until such time as the holders of the Old Senior Secured Notes have been paid in full in cash all amounts owed to them under the Old Senior Secured Notes Purchase Agreement, including the Early Prepayment Premium and Default Interest, irrespective of whether such amounts are recoverable against the Debtors; and (b) requiring the Indenture Trustee to turn over any property received from the Debtors on account of Old Senior Subordinated Note Claims until such time as the Old Senior Secured Note Claims have been paid in full in cash all amounts owing on account of such Claims under the Old Senior Secured Notes Purchase Agreement, including the Early Prepayment Premium and Default Interest.

As discussed above, the Debtors and the Creditors' Committee dispute the ability of the holders of the Old Senior Secured Notes to recover the Early Prepayment Premium and Default Interest from the Debtors. In addition, the Creditors' Committee has asserted that neither the PIK Interest (as defined below) nor the Early Prepayment Premium constitutes Senior Debt as that term is defined in the Old Senior Subordinated Note Indenture, and thus the Old Senior Subordinated Note Claims are not subordinate to the payment of such amounts under the subordination provisions of the Old Senior Subordinated Note Indenture and applicable law. Prior filings of the Plan and this Disclosure Statement reflect that position, which the Debtors and the Creditors' Committee maintain is a likely outcome if the same were to be litigated to conclusion.

However, to avoid the significant cost of litigating the matter among the parties, and to promote a speedy exit from bankruptcy by mooting the Adversary Proceeding, the Debtors, in consultation with the Creditors' Committee, have elected to amend the Plan to render Allowed Class 3 Claims unimpaired. This election is unquestionably available to the Debtors. Under the Plan, the Old Senior Secured Notes will be Reinstated on the Effective Date, pursuant to section 1124(2) of the Bankruptcy Code and Section I.A.91.b of the Plan. Specifically, (a) section 1124(2) of the Bankruptcy Code and Section I.A.91.b of the Plan permit the Debtors to Reinstate debt obligations, such as the Old Senior Secured Notes, which, among other things, de-accelerates the debt, cures all defaults and reinstates the original terms and maturity and (b) the terms of the Old Senior Secured Notes Purchase Agreement permit the Debtors to redeem the Old Senior Secured Notes on or after October 25, 2004 for a prepayment premium of 6%. After the Effective Date, the Debtors anticipate that they will exercise their redemption rights under the Old Senior Secured Notes Purchase Agreement, and redeem the Old Senior Secured Notes in full with a

Cash payment of 106% of principal amount of the Old Senior Secured Notes (which amount shall include the paid-in-kind interest), plus the accrued and unpaid interest thereon at the non-default rate through the date of such payment, in accordance with the terms of the Old Senior Secured Notes Purchase Agreement. Based upon their current Projections, the Debtors believe that they have the ability to redeem the Old Senior Secured Notes as described herein. The Debtors, however, also have available to them the New Term Loan if they determine that such additional financing is necessary to maintain liquidity through peak borrowing seasons in their operations. See "Securities to be Issued on the Effective Date and Other Post-Reorganization Indebtedness—New Term Loan." The Debtors believe that the treatment provided to holders of Old Senior Secured Notes under the Plan resolves the issues described above and moots the Adversary Proceeding. However, certain holders of the Old Senior Secured Notes have asserted that the Reinstatement of the Old Senior Secured Notes under the Plan does not moot the Adversary Proceeding and have asserted that, notwithstanding the Reinstatement of the Old Senior Secured Notes, they have the right to collect additional amounts from holders of Class 7 Claims pursuant to the subordination provisions of the Old Senior Subordinated Note Indenture. The Debtors and the Creditors' Committee dispute this assertion and the parties intend to have the Bankruptcy Court resolve this dispute at or before the Confirmation Hearing. A resolution by the Bankruptcy Court in favor of holders of the Old Senior Secured Notes may dilute the ultimate recovery of Class 7 Claims under the Plan, which may result in the holders of such Claims not receiving the amount of New Common Stock described in the Disclosure Statement.

**Treatment of MLO Claims**

As noted below, in the second quarter of 2000, the Debtors acquired all of the partnership interests in Michigan Limestone Operations Limited Partnership and two related businesses from their prior owners (collectively, the "MLO Sellers") for $53 million in cash at closing and the assumption of approximately $8 million in debt, plus additional contingent payments to be made over several subsequent years (the "MLO Transaction"). See "Summary—Treatment of Claims and Interests; Overview of the Plan—Summary of Classes and Treatment of Claims and Interests; and Reorganized Oglebay—Related Party Transactions—Michigan Limestone Operations." Pursuant to the MLO Contract, the contingent payments to be made by Oglebay to the MLO Sellers (collectively, the "MLO Payments") are subject to the purchased operations combined with the Debtors' Port Inland, Michigan quarry (collectively, the "Purchased Operations"), considered as separate corporate entities, achieving specific levels of yearly performance within established parameters. Specifically, the MLO Sellers were to receive (a) a MLO Payment tied to the aggregate annual tonnage shipped from the Purchased Operations (collectively, the "Tonnage Payments") and (b) MLO Payments tied to the aggregate amount of annual EBITDA for (i) the two purchased operations, the Rogers City, Michigan quarry (the "Rogers City Quarry") and the Cedarville, Michigan quarry (the "Cedarville Quarry"), (ii) the Purchased Operations (which includes the Rogers City Quarry, the Cedarville Quarry and the Port Inland, Michigan quarry), or (iii) both (collectively, the "EBITDA Payments"). Under the MLO Contract, the maximum aggregate amount of annual MLO Payments was $4 million. The MLO Payments were to be made on an annual basis for a period of 10 to 12 years from the closing of the MLO Transaction, depending upon the Purchased Operations' performance. Under the terms of the MLO Contract, upon a "change in control" (as defined in the MLO Contract), which includes a bankruptcy filing by Oglebay, the MLO Sellers have the right to accelerate the MLO Payments in full. The Debtors believe that the MLO Sellers could assert a Claim against the Estates on account of (a) the change in control provision in an amount not more than $14.7 million and (b) other alleged obligations arising under the MLO Contract in an amount not more than $12.1 million. Although the Debtors may have certain defenses to the payment of these Claims, there could be no certainty regarding the resolution of these Claims. As part of the MLO Transaction, Mr. Michael D. Lundin, formerly one of the owners of one of the MLO Sellers and currently chief executive officer of Oglebay, was scheduled to receive a share of the MLO Payments. At the time of the MLO Transaction, Mr. Lundin was not an employee or Board member of, or otherwise associated with, any of the Debtors.

**Legal Effects of the Plan**

Confirmation of the Plan and the occurrence of the Effective Date will result in the discharge of certain Claims and Interests and the creation of related injunctions with respect thereto. Moreover, upon Confirmation and the occurrence of the Effective Date, the Reorganized Debtors will retain and may enforce certain claims and causes of actions against other entities. These legal effects of the Plan are generally described below.

### *Discharge of Claims and Termination of Interests*

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims and termination of all Interests arising on or before the Effective Date, including any interest accrued on Claims from and after the Petition Date. Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date and immediately after cancellation of the Old Common Stock of Oglebay: (a) discharge the Debtors from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (iii) the holder of a Claim based on such debt has accepted the Plan; and (b) terminate all Interests and other rights of holders of Interests in the Debtors.

In accordance with the foregoing, except as provided in the Plan, the Confirmation Order will be a judicial determination, as of the Effective Date and immediately after the cancellation of the Old Common Stock of Oglebay, but prior to the issuance of the New Common Stock, of a discharge of all Claims and other debts and liabilities against the Debtors and a termination of all Interests and other rights of the holders of Interests in the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest; *provided, however*, that, notwithstanding the extinguishment of any such judgment, the existence of a validly entered judgment may be treated as evidence of the entitlement to a Claim in the Chapter 11 Cases, which Claim, subject to other applicable requirements, will be satisfied by the distribution, if any, provided under the Plan.

### *Injunctions*

As of the Effective Date, except as provided in the Plan or the Confirmation Order or agreed to by the Debtors or the Reorganized Debtors, all entities and persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of a holder of an Interest that is terminated pursuant to the terms of the Plan will be permanently enjoined from taking any of the following enforcement actions on account of any such discharged Claims, debts or liabilities or terminated Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against any Debtor, any Reorganized Debtor or its respective property, other than to enforce any right pursuant to the Plan to a distribution or to continue litigation related to Reinstated Tort Claims; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against any Debtor, any Reorganized Debtor or its respective property, other than as permitted pursuant to (a) above; (c) creating, perfecting or enforcing any lien or encumbrance against any Debtor, any Reorganized Debtor or its respective property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor or any Reorganized Debtor; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

As of the Effective Date, all entities and persons that have held, currently hold or may hold any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that are released pursuant to the Plan will be permanently enjoined from taking any of the following actions against any released entity or its property on account of such released claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities:
(a) commencing or continuing in any manner any action or other proceeding other than litigation related to Reinstated Tort Claims; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, other than with respect to litigation related to Reinstated Tort Claims; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released entity; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

*Termination of Certain Subordination Rights and Settlement of Related Claims and Controversies*

The classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code or otherwise, that a holder of a Claim or Interest may have against other Claim or Interest holders with respect to any distribution made pursuant to the Plan. Except as provided in Section XI.C.3 or Section XI.C.4 of the Plan, all subordination rights that a holder of a Claim may have with respect to any distribution to be made pursuant to the Plan will be discharged and terminated, and all actions related to the enforcement of such subordination rights will be permanently enjoined. Accordingly, distributions pursuant to the Plan to holders of Allowed Claims will not be subject to payment to a beneficiary of such terminated subordination rights or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the subordination rights that a holder of a Claim may have with respect to any Allowed Claim or any distribution to be made pursuant to the Plan on account of any Allowed Claim, except as provided in Section XI.C.3 or Section XI.C.4 of the Plan. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, the Reorganized Debtors and their respective property and Claim and Interest holders and is fair, equitable and reasonable.

Notwithstanding anything to the contrary contained in Section XI.C of the Plan, the provisions of section 510(b) of the Bankruptcy Code, to the extent applicable, are expressly preserved and shall be enforced pursuant to the Plan.

Notwithstanding anything to the contrary contained in Section XI.C of the Plan, any and all rights, arguments and defenses relating to the subordination provisions contained in the Old Senior Subordinated Note Indenture are expressly preserved solely for the holders of Class 3 Claims and Class 7 Claims, the Debtors, the Reorganized Debtors, the Indenture Trustee and the Creditors' Committee and shall be enforced in accordance with a Final Order of the Bankruptcy Court resolving the parties' respective rights under such subordination provisions.

The Plan provision described in the preceding paragraph is intended to leave the contractual subordination rights of the holders of the Old Senior Secured Notes unimpaired. The Debtors and the Creditors' Committee believe, among other things, that the Reinstatement of the Old Senior Secured Notes under the Plan cures any and all defaults and default triggers under such notes and that, accordingly, the subordination provisions of the Old Senior Subordinated Note Indenture are meaningless

**Exhibit B**

after the Effective Date. The *Ad Hoc* Committee of Noteholders disagrees with this position and believes that such subordination provisions are still enforceable against the holders of the Old Senior Subordinated Notes. The parties intend to have the Bankruptcy Court resolve this and certain other issues relating to the subordination provisions of the Old Senior Subordinated Note Indenture.

### *Preservation of Rights of Action by the Debtors and the Reorganized Debtors; Recovery Actions*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors will retain and may enforce any claims, demands, rights, defenses and causes of action that the Debtor or the Estate may hold against any entity. Each Reorganized Debtor or its successor may pursue such retained claims, demands, rights, defenses or causes of action, as appropriate, in accordance with the best interests of such Reorganized Debtor or its successor holding such claims, demands, rights, defenses or causes of action. On the Effective Date, the Debtors will be deemed to have released and abandoned the Recovery Actions.

### *Comprehensive Settlement of Claims and Controversies*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan, including the releases set forth in Section IV.E.3 of the Plan, will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, Reorganized Debtors, Estates and their respective property and Claim and Interest holders and is fair, equitable and reasonable.

### *Releases and Related Injunction*

Except as otherwise expressly set forth in the Plan, on and after the Effective Date, the Debtors are released from all Liabilities from the beginning of time.

Without limiting any other applicable provisions of or releases contained in the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their affiliates, the Estates and their respective successors, assigns and any and all entities who may purport to claim by, through, for or because of them, including any person appointed pursuant to section 1123(b)(3) to pursue Recovery Actions, will forever release, waive and discharge all Liabilities that they have, had or may have against any Released Party. For purposes of the Plan, "Released Parties" means collectively and individually, the Debtors, the Creditors' Committee and its members (solely in their capacity as such), the Indenture Trustee and the Representatives of each of the foregoing.

Without limiting any other applicable provisions of or releases contained in the Plan, as of the Effective Date, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the Cash and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each holder of a Claim or Interest that votes in favor of the Plan will be deemed to forever release, waive and discharge all Liabilities in any way relating to a Debtor, the Chapter 11 Cases, the Estates, the Plan, the Disclosure Statement or the Old Senior Subordinated Indenture that such entity has, had or may have against any Released Party (which release will be in addition to the discharge of Claims and termination of Interests provided herein and under the Confirmation Order and the Bankruptcy Code).